### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS

United States of America,

        **Plaintiff,**

v.                                    Case No. 07-20099-16-JWL

Cesar Osbaldo Armendariz Soto,

        **Defendant.**

### MEMORANDUM & ORDER

In August 2009, defendant entered a plea of guilty to, among other things, conspiracy to distribute large quantities of cocaine and marijuana, money laundering, and a firearms violation. Defendant agreed to plead guilty without a plea agreement but, before sentencing, asked the court for leave to withdraw the plea that he had entered and the court had accepted.  The court denied the motion after a hearing, finding that defendant testified falsely about his counsel's advice.  At sentencing, the court found that the false testimony defendant had given in connection with his motion to withdraw the plea warranted the imposition of a sentencing enhancement for obstruction of justice and the denial of a sentencing reduction for acceptance of responsibility.  The court's resulting sentencing calculations yielded an advisory guidelines range of 420 months to life imprisonment. After weighing the sentencing factors listed in 18 U.S.C. § 3553(a), the court imposed a sentence of 420 months, the bottom end of the guidelines range.  In October 2015, the court reduced defendant's sentence pursuant to Amendment 782, resulting in a total sentence of 352 months.  His projected release date is April 25, 2033.

This matter is now before the court on defendant's second motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) (doc. 1176).[1]  The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A).  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)).  Under that test, a court may reduce a sentence if the defendant administratively exhausts[2] his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a).  *Id*.  A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id*. at 1043. But when a district court grants a motion for compassionate release, it must address all three steps. *Id*.  As will be explained, defendant has not come forward with extraordinary and compelling reasons sufficient to warrant a reduction in his sentence.  The motion, then, is denied and the court declines to address the other prerequisites.[3]

In his motion, defendant seeks a sentence reduction based on a combination of factors that he contends together constitute an extraordinary and compelling reason for early release. Specifically, defendant points to alleged changes in the sentencing laws since the time he was sentenced and an alleged sentence disparity between him and his co-defendants; the COVID

---

[1] Defendant's first motion was filed in March 2021 but was denied based on defendant's failure to demonstrate that he had exhausted his administrative remedies.

[2] The government concedes that defendant has adequately exhausted his administrative remedies.

[3] Also pending before the court is defendant's motion for permission to file a reply brief to the government's response (doc. 1175) which the court grants.  The court notes that defendant has filed his reply and defendant's motion is fully briefed.

pandemic; his young age at the time he committed his crimes; his family circumstances; and his

rehabilitative efforts while in custody.  As will be explained, none of these reasons, even taken

together, are sufficient to reduce defendant's sentence.  The motion is denied.

*Changes in Sentencing Laws and Sentence Disparity*

In his submissions, defendant suggests that his sentence would be lower if he were

sentenced today for the same conduct.  The record reveals, however, that defendant's sentence

was based on a straightforward application of the sentencing guidelines in light of his crimes of

conviction and certain aggravating factors, including his perjury at the hearing on his motion to

withdraw his guilty plea.  In essence, then, defendant's challenge to his lengthy sentence is one to

the sentencing guidelines themselves. This complaint is likely shared by a significant number of

individuals who are serving lengthy sentences after drug convictions. But, as explained by the

Tenth Circuit, § 3582(c)(1)(A) is designed to remedy a defendant's "unique circumstances."

*United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021). Defendant has not identified any

circumstances about his sentence, unique to him, that warrant a reduction in his sentence. *See*

*United States v. Georgiou*, 2021 WL 1122630, at *10 (E.D. Pa. Mar. 23, 2021) (rejecting argument

that defendant's 300-month sentence was disproportionately long; defendant's challenge was to

the guidelines themselves, a challenge that § 3582(c) was not designed to remedy) (citing *United*

*States v. Williams*, 2020 WL 5573046, at *4 (E.D. Pa. Sept. 17, 2020) ("The remedy that

[defendant] seeks is reserved for circumstances peculiar to an individual—his health, his age—

and is not designed to challenge the guidelines themselves . . . [This] would undermine the very

function of the federal sentencing regime: to provide certainty and consistency across sentences.")).

Defendant seems to suggest that the First Step Act's lower mandatory minimums, while not directly impacting his sentence, are sufficient to support a downward variance to a sentence of 120 months.  According to defendant, without that variance, his sentence is unreasonably disproportionate to his co-defendants with similar participation in the conspiracy.  It is certainly true that the law requires a sentencing court to avoid unwarranted sentencing disparities among similarly situated defendants. *See* 18 U.S.C. § 3553(a). But as the Tenth Circuit noted in connection with defendant's direct appeal of his sentence:

> [R]ational reasons can exist for treating co-defendants differently at sentencing. A district court must, after all, consider the criminal history, degree of cooperation, specific offenses of conviction, and personal backgrounds of each of the defendants before it. *See id.* And what a court uncovers when considering these factors may well reasonably lead it to distinguish otherwise similarly situated individuals. This is such a case.

*United States v. Soto*, 660 F.3d 1264, 1270 (10th Cir. 2011).  At defendant's sentencing, the court found that defendant served as the "right hand man" to Rene Garcia Rodriguez, the head of the conspiracy, such that it made sense that defendant's sentence would be "in the same ballpark" as Mr. Garcia Rodriguez as a starting point.  Indeed, the court identified defendant as the "second most culpable individual" after Mr. Garcia Rodriguez.  But the court explained at length why Mr. Garcia Rodriguez received less prison time than defendant did. Unlike defendant, Mr. Garcia Rodriguez extensively cooperated with the government, did not obstruct justice, and accepted responsibility for his conduct.  Thus, there is no "unreasonable" disparity between defendant's

sentence and Mr. Garcia Rodriguez's sentence and the disparity that does exist does not constitute an extraordinary and compelling reason for a sentence reduction.

*COVID Pandemic*

Defendant asserts that his hypertension as well as the conditions of his confinement create an increased risk of serious harm or death if he contracts COVID-19.  But, as defendant concedes, he has already contracted COVID and has since been vaccinated against COVID-19.   Despite his insistence otherwise, these factors change the analysis of defendant's risk.  The medical records reveal that defendant, in December 2020, tested positive for COVID-19 but there is no indication that defendant has any lingering effects from the infection, that he had any specific symptoms during that infection, or that he required any medical treatment for that infection.  The fact that defendant has already contracted and recovered from COVID-19 cuts against his argument that compassionate release is warranted. *See United States v. Lee*, 849 Fed. Appx. 601, 602 (7th Cir. 2021) (district court did not abuse discretion in denying motion for compassionate release where, among other things, the defendant had recovered from an asymptomatic COVID-19 infection such that health complications from COVID-19 were unlikely); *United States v. Mackety*, 2021 WL 2345764, at *2 (6th Cir. June 8, 2021) (same); *United States v. Hays*, 2021 WL 3280729, at *3 (D. Or. July 30, 2021) (denying motion for compassionate release because defendant had already contracted and recovered from COVID-19); *United States v. Funez*, 2021 WL 168447, at *3 (D. Colo. Jan. 19, 2021) (finding it significant that the defendant had already contracted COVID-19 and recovered without incident).  Defendant's concerns about COVID-19, then, do not rise to the level of "extraordinary and compelling" circumstances sufficient to justify compassionate release.

*See United States v. Birdsong*, 2020 WL 7316101, at *5 (D. Kan. Dec. 11, 2020) ("While the Court is sympathetic to Birdsong's concerns, generalized concerns about COVID-19, even when the virus has spread within a correctional facility, do not create the type of extraordinary and compelling circumstances sufficient to justify compassionate release.").

Moreover, an overwhelming majority of district courts to consider the issue have found that vaccination against COVID-19 "changes the calculus on the 'extraordinary and compelling reasons' inquiry when defendants claim that their medical conditions place them at an increased risk for severe illness from COVID-19." *United States v. Barnette*, 2021 WL 2805376, at *4 (D. Kan. July 6, 2021) (collecting cases). Defendant's vaccination against COVID-19 significantly reduces the risk that he will experience a severe complication or death from another COVID-19 infection. While the record does not reflect that defendant has yet been offered a booster shot, the court cannot conclude on this record that defendant's health conditions present an extraordinary and compelling reason warranting release, particularly because the virus has been circulating so widely that defendant's chances of contracting COVID-19 are likely the same whether he is in custody or out of custody. *United States v. Fierro*, 2022 WL 489829, at *2-3 (D. Nev. Feb. 17, 2022) (even though record did not reflect that defendant had received booster shot, health conditions did not constitute extraordinary and compelling reasons for release where defendant had already had asymptomatic COVID-19 infection, two doses of Moderna vaccine, and his risk was likely the same in or out of custody); *United States v. Rossi*, 2022 WL 395001 at *3 (D. Nev. February 9, 2022) ("the current phase of the pandemic is one in which the virus is circulating so widely that [Defendant] cannot reasonably expect to avoid coming into contact with COVID-19 outside of custody"); *United States v. Jaber*, 2022 WL 35434, at *3 (S.D.N.Y. Jan. 4, 2022) (even

though Omicron more resistant to vaccines, studies show that Omicron causes less serious infection in most vaccinated people and, given speed of Omicron spread through unincarcerated population, court could not say with confidence that defendant would be safer outside of custody).

*Age*

Defendant urges the court to consider that he was only 19 years old at the time he committed his crimes and to reduce his sentence accordingly.[4]  Defendant highlights research suggesting that an individual's reasoning skills and ability to exercise sound judgment are not fully developed until the age of 25 and that 18- to 20-year-olds are more impulsive than older individuals.  The court fully considered defendant's relatively young age at the time it sentenced defendant.  As the court noted at that time, significant evidence demonstrated to the court that defendant "well understood his actions to be unlawful and that he was deeply involved at a high level in a significant drug trafficking conspiracy." *United States v. Soto*, 660 F.3d 1264, 1270 (10th Cir. 2011).  Contrary to his suggestion, defendant did not succumb to peer pressure or act rashly in light of his age.  He was a willing participant in the conspiracy and, despite his age, learned quickly from numerous sophisticated drug traffickers until he was operating at a management-level role in the conspiracy and performing integral, important functions in the

---

[4] Defendant also references section 608(c) of the First Step Act, which defines "youth" as a prisoner who was 21 years of age or younger at the time of the commission of the criminal offense for which the individual is serving a term of imprisonment. While defendant suggests that he is entitled to relief because he is a "youth" under this definition, it is irrelevant here.  Section 608 of the First Step Act provides for two "Pilot Programs" including one program for mentoring youth in prison and the definition is used solely in connection with that pilot program.  First Step Act of 2018, Pub. L. No. 115-391, § 608(c), 132 Stat. 5194, 5220 (Dec. 21, 2018).

7

operation of the conspiracy.  Nothing in the record indicates that defendant was simply exercising poor judgment in light of his age.  The court rejects this argument. *United States v. Augustin*, 2021 WL 6059564, at *1 (3d Cir. Dec. 20, 2021) (district court did not abuse discretion in denying motion for compassionate release where youth and age were already considered at sentencing and criminal record did not suggest an isolated incident of poor judgment by a young person); *United States v. Rimpson*, 2021 WL 6098440, at *1 (7th Cir. Sept. 22, 2021) (defendants' relatively young ages at the time of the offenses provided no reason—let alone an extraordinary and compelling one—to reduce their sentences when district court knew their ages when it imposed sentences initially).

*Family Circumstances*

Defendant asserts that a sentence reduction is warranted in part because he needs to care for his disabled mother.  While it is commendable that his mother's wellbeing is now forefront in defendant's mind, the welfare of his mother (who, as reflected in the PSR, was disabled at the time defendant engaged in the conspiracy) was an insufficient deterrent at the time he committed his crimes and it is not the court's obligation to lessen the burden that defendant placed on his family in the first instance. *United States v. Williamson*, 2021 WL 861352, at *3 (M.D.N.C. Mar. 8, 2021).  Moreover, the record reflects that defendant's mother has an adult grandchild who lives with her and other grandchildren who live in town and visit her on occasion.  While defendant summarily states that these individuals cannot provide adequate care for his mother, he fails to elaborate on that statement.  The record also fails to establish who has been providing care for his mother during his incarceration and how that care has been inadequate.  In short, defendant has

not established that other reasonable options for care for his mother are unavailable and the record before the court concerning defendant's purported need to care for his mother falls remarkably short of establishing an extraordinary and compelling reason for a sentence reduction.

*Rehabilitation*

Defendant asserts that his rehabilitative efforts in BOP custody support a sentence reduction. Defendant highlights that he has completed several BOP programs and has been pursuing his GED; that he has held various work details at all security levels, demonstrating a low recidivism risk; and that he feels remorse for engaging in criminal conduct. But, as defendant concedes, the record also reflects a significant disciplinary record while in custody, including incidents concerning possession of weapons and assault.

In any event, the court cannot conclude that the record here establishes extraordinary and compelling rehabilitation for purposes of early release.  While some courts have found extraordinary and compelling circumstances to exist when presented with applications by defendants who had spent substantial time in prison and had demonstrated significant rehabilitation during that time, those courts also found a specific defect or inequity in the defendant's sentence, *see United States v. Alvarez*, 2020 WL 4904586, at *5 (E.D.N.Y. Aug. 20, 2020), such as Congress's decision to eliminate stacked sentencing under § 924(c). *See, e.g., United States v. Nafkha*, 2021 WL 83268, at *4 (D. Utah Jan. 11, 2021) (young age at time of offenses, rehabilitation in prison, good character and elimination of mandatory sentence stacking under § 924(c), considered together, established extraordinary and compelling reasons for compassionate release) (collecting cases).  That critical factor is absent from the record here. As

9

explained in this opinion, defendant has not come forward with any other extraordinary and compelling reasons, unique to him, that might justify early release.  And Congress does not consider rehabilitation alone to be an extraordinary and compelling reason for purposes of compassionate release. *See* 28 U.S.C. § 994(t)).  The court, then, rejects this argument as a basis for a sentence reduction.  *See United States v. Mora*, 2021 WL 5711087, at *2 (10th Cir. Dec. 2, 2021) (no flaw in district court's reasoning where court denied early release despite minimal disciplinary record and rehabilitation efforts); *United States v. Rodriguez*, 837 Fed. Appx. 652, 653 (10th Cir. 2021) (same).

*Summary*

While the court has addressed each of defendant's arguments for a sentence reduction individually, the court emphasizes that even viewing all of those circumstances in combination, defendant has not demonstrated extraordinary and compelling circumstances that warrant a sentence reduction.  His motion is, therefore, denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's second motion for a sentence reduction pursuant to 18 U.S.C. § 3852(c)(1)(A) (doc. 1176) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's motion for permission to file a reply brief to the government's response (doc. 1175) is **granted.**

**IT IS SO ORDERED.**

Dated this __26th__ day of April, 2022, at Kansas City, Kansas.

    s/ John W. Lungstrum
_____
John W. Lungstrum
United States District Judge